UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

COMMODITIES & MINERALS ENTERPRISE LTD.,

    Plaintiff,

vs.                                                                               Case No.:

GRETCHEN SHIPPING INC.,

    Defendant.

_____/

## MOTION FOR ORDER FOR ISSUANCE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT AND CERTIFICATION OF EXIGENT CIRCUMSTANCES

Plaintiff, COMMODITIES & MINERALS ENTERPRISE LTD. ("Plaintiff" or "CME"), by and through undersigned counsel and pursuant to Supplemental Rule B(1), and Local Admiralty Rule 7.02(c)(1), moves this Honorable Court for an order directing the Clerk to issue the summons and process of attachment and garnishment against the tangible and intangible property of GRETCHEN SHIPPING INC. ("Defendant") including: (1) draws from an Irrevocable Standby Letter of Credit issued by Citibank N.A. care of its servicer Citicorp North America, Inc., 3800 Citibank Center, Building B, 3rd Floor, Tampa, FL 33610 (the "Letter of Credit"), on which Letter of Credit Defendant is a beneficiary and on which Letter of Credit Defendant is expected to draw today or shortly thereafter, and (2) any and all tangible property, intangible property, assets or credits of Defendant within this jurisdiction, as requested in the Verified Complaint (Dkt. 1) filed herein.

1

## MEMORANDUM OF LAW IN SUPPORT

The foregoing Motion for Issuance of Process of Maritime Attachment and Garnishment is made in accordance with Supplemental Rule B and Local Admiralty Rule 7.02. CME seeks to attach as security certain property of Defendant as Defendant cannot be found within this District. As required by Local Admiralty Rules 7.02(c)(1) and 7.02(c)(3), Plaintiff CME has prepared and attaches hereto a proposed Order directing the issuance of the process of attachment and garnishment, and the summons and process of attachment and garnishment.

## BACKGROUND FACTS

The facts in support of this Motion are set forth in the Verified Complaint filed by CME as well as the accompanying Declarations of Natalie P. Thomas, Esq. and Michael J. Frevola, Esq. ("Thomas Decl." and "Frevola Decl.," respectively, "Declarations" collectively"), and are incorporated herein. This is a maritime action involving the chartering of the *M/V GENERAL PIAR* (the "Vessel"), in which the Vessel's owner (Defendant Gretchen) and its manager non-party Kyma Ship Management Inc. ("Kyma") conspired with other non-parties, including CME's counsel, to induce CME to charter the Vessel at an above-market rate and under grossly one-sided terms, by which charter Gretchen and other non-parties profited by defrauding plaintiff CME. Verified Complaint (Dkt. #1), ¶ 1. The Vessel was chartered by CME as a result of meetings in Florida amongst CME and Kyma (on its own behalf and as the representative of Gretchen), non-party Stephen Harrington (a consultant of Gretchen and Kyma), and non-party Gerardo Vazquez (CME's lawyer). *Id.* ¶ 2. As detailed in the Verified Complaint, Vazquez was CME's lawyer and acted as CME's representative during the charter fixture discussions. *Id.* ¶¶ 23-35. Unknown to CME until recently, however, Vazquez had been incentivized by Kyma/Gretchen to

induce CME to enter the Vessel charter through a promised kickback on each hire payment made by CME, the total of which kickbacks now exceed $500,000. *See id.* ¶ 62(c).

When CME recently discovered evidence of their attorney being paid by Gretchen, CME notified Gretchen that it was terminating the Charter and redelivering the Vessel. *See id.* ¶ 70. Gretchen had an outstanding hire invoice pending that was to be paid on Monday, September 16, 2013, which invoice Gretchen repeatedly reminded CME was owing immediately after CME did not pay on the due date. Since CME has advised Gretchen that CME was redelivering the Vessel, CME requested that an arbitration panel be convened regarding an existing dispute between the parties issue an immediate Partial Final Award in the full amount of the Letter of Credit. Thomas Decl., ¶ 10 & Ex. B. That application was postponed pending resolution of the New York Rule B proceedings. In the Rule B proceedings themselves, Gretchen specifically referred to its right to draw down on the Letter of Credit that was being hindered by CME's Rule B attachment order. And last Friday, after the Rule B hearing had concluded, Gretchen served notice to CME that it had appointed an agent in this District, Thomas Decl., ¶ 7 & Ex. A, apparently in an attempt to prevent CME from stopping CME from attaching the Letter of Credit proceeds so that the funds may stay in place pending arbitration of the parties' dispute.

CME claims at least $28,563,925, which includes the principal amount of the claim, interest, and estimated costs and attorney's fees to conduct arbitration.

## ARGUMENT

Maritime attachment is a distinctive admiralty remedy that was part of the American jurisprudence at the time the Constitution was adopted. *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottachi S.A. de Navigation*, 773 F.2d 1528 (11th Cir. 1985); *see generally* Thomas J. Schoenbaum, Admiralty and Maritime Law, § 21-2 at 507 (3d ed. 2001). Under Supplemental

3

Rule B, *in personam* jurisdiction over the defendant in an admiralty proceeding may be obtained by compelling the defendant's appearance through attachment of its goods and chattels, or credits and effects. *See Swift & Co. Packers v. Compania Columbiana del Caribe*, 339 U.S. 684 (1950).

Supplemental Rule B contemplates an *ex parte* motion and hearing. Schoenbaum, § 21-2 at 510. As noted by the Ninth Circuit in its oft-cited *Polar Shipping* decision:

> Maritime law deals primarily with ships that sail the seven seas. A ship may be here today and gone tomorrow, not to return for an indefinite period, perhaps never. Assets of its owner, including debts for freights, as in this case, within the jurisdiction today, may be transferred elsewhere or paid off tomorrow. It is for these reasons that maritime actions *in rem*, libelling a ship or other assets of a defendant, Supplemental Rule C, or attachment in actions *in personam*, Supplemental Rule B, were developed. These reasons are as valid today as they ever were. Particularly in the case of debts and credits, such as the debt for freight that was attached in this case, they are necessary and valid today. In this electronic age, freights owing to a charterer, such as Sanko, can be transferred instanter, by electronic orders, from, say, Honolulu, to, say, a numbered bank account in a bank in Switzerland or some other non-maritime haven. *The need to attach now and notify later is as great now as it ever was, if not greater.* A ship can quietly slip its moorings and depart the jurisdiction. It can easily take with it such tangible property as may be within the jurisdiction. *And credits can be quickly transferred elsewhere. . . .*
>
> * * *
>
> *Due process does not require pre-attachment notice. Such notice could readily defeat the whole proceeding.* The ship, if it were being libelled under Supplemental Rule C, could depart beyond the jurisdiction; the other property, to be seized under Supplemental Rule C, or attached under Supplemental Rule B, could be shipped out, otherwise disposed of, or concealed; *credits, such as are here involved, could be collected or transferred out of the jurisdiction.*

*Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637-38 (9th Cir.1982) (emphasis added).

An order of attachment will issue when the plaintiff makes a *prima facie* showing that he has a maritime claim and the defendant is not present. Schoenbaum, § 21-2 at 511.

Federal courts examining maritime attachment applications will grant the application if the plaintiff can show that:

> (1) it has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.

*Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488 (2d Cir. 2013) (quoting *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)).

CME has, through the facts alleged in the Verified Complaint and the supporting Declarations, provided this Court with facts to show probable cause that Defendant's property is subject to attachment under Supplemental Rule B.

Three of the four above elements warrant little discussion, namely elements one, two, and four. CME has brought an *in personam* claim against Defendant, and the claim is cognizable in admiralty as it involves the fraudulent inducement of a maritime contract (i.e., the Charter party). *Odyssey Marine Exploration, Inc. v. The Unidentified, Shipwrecked Vessel or Vessels*, 636 F.3d 1338, 1339-41 (11th Cir. 2011) (reversing district court and holding that plaintiff's fraudulent inducement claim was a maritime claim); *see also Sea Lane Bahamas Ltd. v. Europa Cruises Corp.*, 188 F.3d 1317, 1320 (11th Cir. 1999) (holding that a contract for the charter of a vessel is a maritime contract within admiralty jurisdiction). Furthermore, as explained in the Verified Complaint as well as the accompanying Frevola Declaration, Defendant already has argued that CME's claim is not a maritime claim, which argument was rejected this past Friday by the United States District Court for the Southern District of New York. Verified Complaint, ¶ 12; Frevola Decl., ¶ 6. Therefore, Defendant should be collaterally stopped from raising this issue before this Court.

Additionally, and as evidenced by the accompanying Thomas Declaration, Defendant (a Liberian company) cannot be found in this District.[1]  Thomas Decl., ¶¶ 3-7.

CME further submits that there are no statutory or general maritime law prohibitions to this attachment.

The third element is also met and Defendant is judicially estopped from contesting it.  Last Friday, Defendant succeeded in vacating an otherwise valid Rule B attachment order in the Southern District of New York by successfully arguing that the Citibank Letter of Credit proceeds – to which proceeds Defendant is the sole beneficiary – were not "present" in New York but rather were present in Tampa, Florida under the terms of the Citibank Letter of Credit.  Frevola Decl., ¶¶ 13, 14 & Exs. D & E.  By taking this position and succeeding on its application, Defendant now is estopped from arguing that the Citibank Letter of Credit proceeds are not in this District.  *See, e.g., Apotex, Inc. v. UCB, Inc.*, No. 12-60706-CV, ___ F. Supp. 2d ___, 2013 WL 4811231, *27 (S.D.Fla. Sept. 9, 2013) (stating that "[j]udicial estoppel is an 'equitable doctrine invoked at a court's discretion,' and is designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.' ") (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001))).

---

[1] Apparently in an effort to prevent this maritime attachment action and to escape with the Citibank Letter of Credit funds, Defendant advised CME on Friday (after the New York court hearing) that it had appointed an agent for service of process in the Middle District of Florida.  The "presence" inquiry in Rule B cases, however, is a two-part process.  In order to be "present" in the district to preclude a Rule B attachment, the defendant must (1) be capable of being served in the district and (2) the defendant must be subject to this court's *in personam* jurisdiction within the district.  *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1355 n.19 (M.D.Fla. 2001) (quoting *Nehring v. M/V POINT VAIL*, 901 F.2d 1044, (11th Cir. 1990)).  While Defendant's appointment of an agent for service satisfies the second level of inquiry of the presence test, CME has searched for Defendant within this District without success and thus Gretchen has not met the threshold level of inquiry.  Thomas Decl., ¶ 7.  Hence, under the Rule B "presence" inquiry, Defendant is not present in the Middle District of Florida.

6

CME has alleged, and the facts support, the assertion that Defendant will draw on the Citibank Letter of Credit imminently, at which point Defendant's property will be present in the this District. *See, e.g.*, exigent circumstances certification, *infra*.

## CONCLUSION

For the above and foregoing reasons, COMMODITIES & MINERALS ENTERPRISE LTD. requests this Honorable Court grant the Motion for an Order for Issuance of Process of Attachment and Garnishment, pursuant to Supplemental Rule B and Local Admiralty Rule 7.02, and enter an Order directing the issuance of the process of attachment and garnishment against the tangible and intangible property of GRETCHEN SHIPPING INC. located in this District, including, but not limited to (1) draws from the Citibank Letter of Credit, and (2) any and all tangible property, intangible property, assets or credits of Defendant within this jurisdiction, as requested in the Verified Complaint (Dkt. #1) filed herein.

## CERTIFICATION OF EXIGENT CIRCUMSTANCES

As CME has not paid its hire payment owed under the Charter that was due on September 16, which it has refused to pay as it seeks to rescind the Charter, Defendant can seek to obtain a draw from the Letter of Credit. Defendant already has sought to draw on the entire $2.5 million by requesting such relief from an arbitration panel, which postponed hearing Defendant's request pending the results of the New York court's ruling on the Rule B vacatur motion. See Thomas Decl. ¶ 10 Ex. B. Defendant's counsel has made clear that Defendant will draw on the Letter of Credit as soon as possible, and Defendant's reply brief in the New York Rule B proceeding spoke of CME interfering with Defendant, "being able to exercise its rights with respect to the letter of credit." *Commodities $ Minerals Enterprise Ltd. v. Gretchen Shipping, Inc.*, No 13 Civ. 6548,

Dkt. #13, p. 10 (filed Sept. 26, 2013). Assuming that Defendant couriered its documents of Friday demanding to draw on the Letter of Credit, those documents will be arriving this morning at Citibank's Letter of Credit department and presumably will be processed today (and the resulting payment will issue today).

Because of the foregoing circumstances, the undersigned counsel certifies that exigent circumstances exist pursuant to Local Admiralty Rule 7.02(c)(2) and that review by the Court is impracticable.

Dated: September 30, 2013
      Tampa, Florida

                              Respectfully submitted,

By:   /s/ Natalie P. Thomas
      Natalie P. Thomas
      HOLLAND & KNIGHT LLP
      100 North Tampa Street, Suite 4100
      Tampa, FL 33602
      Telephone: (813) 227-6754
      Facsimile: (813) 229-0134
      Email: natalie.thomas@hklaw.com

*Counsel for Commodities & Minerals Enterprise Ltd.*