**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

COMMODITIES & MINERALS
ENTERPRISE LTD.,

                Plaintiff,                    Case No.: 8:13-cv-2512-JSM-MAP

v.

GRETCHEN SHIPPING INC.,

                Defendant.

_____/

**MOTION FOR ORDER DIRECTING PLAINTIFF TO SHOW CAUSE WHY
MARITIME ATTACHMENT SHOULD NOT BE VACATED, REQUEST FOR
EXPEDITED HEARING, AND INCORPORATED MEMORANDUM OF LAW**

      Defendant, GRETCHEN SHIPPING INC. ("Gretchen"), by and through its

undersigned counsel and pursuant to Supplemental Rule E(4)(f), moves the Court for entry of

an order directing Plaintiff, Commodities & Minerals Enterprise Ltd. ("CME"), to show

cause why the Order Directing the Issuance of the Process of Attachment and Garnishment

(Doc. 6) and Process of Attachment and Garnishment issued by the Clerk (Doc. 8) should not

be vacated upon the following grounds:

      1.      Plaintiff has not and cannot satisfy the requirements of Supplemental Rule B.

            a.      CME's Complaint does not state an admiralty and maritime claim.

            b.      Gretchen can be found within the district as contemplated by Local

Rule 7.02(a).

            c.      The "property" sought to be attached is not property of Gretchen.

2.     On the equitable grounds that Gretchen is subject to suit in a convenient adjacent jurisdiction.

Gretchen requests an expedited hearing under Supplemental Rule E(4)(f).  Lastly, if the attachment is vacated, Gretchen requests its attorney's fees, costs, and other expenses incurred as a result of the seizure.

## MEMORANDUM IN SUPPORT

## STATEMENT OF FACTS

Gretchen is the registered owner of the M/V GENERAL PIAR, a self-unloading bulk carrier (the "Vessel").  CME is the charterer of the Vessel.  The parties entered into a charter party (vessel lease contract) for charter of the Vessel on January 25, 2010, for a period of 60 months (the "Charter Party," a copy of which is attached as Exhibit 1 to Plaintiff's Verified Complaint – *see* Doc. 1-1).

One of the terms of the Charter Party was that CME was required to obtain an irrevocable standby letter of credit from a first-class bank with offices in Miami in the amount of $2.5 million in favor of Gretchen to serve as security for the hire payments owed by CME under the Charter Party.  (*See* Doc. 1-1, at Clause 25).

CME obtained an Irrevocable Standby Letter of Credit from Citibank N.A. on January 28, 2011, for a term of 60 months (the "Letter of Credit" – *see* Doc. 4-5).  Pursuant to the terms and conditions of the Letter of Credit, one of four conditions must be met before Gretchen may draw from the Letter of Credit: (1) CME's non-payment of the hire due to Gretchen; (2) an arbitration award against CME in favor of Gretchen; (3) CME's failure to

renew the Letter of Credit; or (4) CME's failure to reinstate the Letter of Credit following two consecutive draws.  (*See* Doc. 4-5).

On June 25, 2012, CME initiated arbitration proceedings in New York, per Clause 22(B) of the Charter Party.  The arbitral panel has been convened, the parties have made submissions, and the arbitration remains on-going.  In the arbitration, CME alleges breach of contract, unseaworthiness of the Vessel, fraud and misrepresentation by Gretchen and non-party KYMA SHIP MANAGEMENT, INC. and seeks damages from Gretchen and rescission, cancellation, and termination of the Charter Party.

In June of 2012, CME also sought an injunction and a temporary restraining order in the Southern District of Florida to restrain Gretchen from drawing down on the Letter of Credit.  (*See Commodities & Minerals Enterprise, Ltd. v. Citibank, N.A., et al.*, Case No. 12-22333-CIV-UNGARO (S.D. Fla.), Docs. 1, 3, 7, and 8).  CME's requests for relief were denied in their entirety, and the Southern District lawsuit was dismissed because of the Charter Party's arbitration clause in September of 2012.  (*See* Case No. 12-22333-CIV-UNGARO (S.D. Fla.), Docs. 26, 27, and 28).

As the Declaration of Michael J. Frevola dated September 29, 2013 ("Frevola Declaration" – *see* Doc. 4) submitted by CME in support of its request for the issuance of the Attachment Order explains, CME recently attempted to restrain the Letter of Credit via a Supplemental Rule B action in the Southern District of New York.  (*See* Doc 4).

While Gretchen concurs with the facts of the Southern District of New York Supplemental Rule B action as set forth in paragraphs 2 through 4 of the Frevola Declaration,

Gretchen takes exception to the facts in connection with the show cause hearing on September 27, 2013, as set forth in paragraphs 5 through 8 therein.

As to element 1 of the four (4) part *Aqua Stoli*[1] test, *i.e.*, whether CME has alleged a valid *prima facie* admiralty claim, Judge Castel in fact reached no decision on that issue:

> And here, where the claim is to rescind what is undeniably a maritime contract, I conclude at least, or I provisionally conclude, that that likely would be a claim within the maritime jurisdiction of this court. **And I assume that for the purposes of deciding this motion, but happily I am not called upon to make a final determination of that**… Suffice it to note that Odyssey Marine found that there was maritime jurisdiction in an action seeking fraudulent inducement, or seeking rescission on the basis of fraudulent inducement into a maritime contract, and the Kuehne case stands for a contrary position.
>
> **So without deciding the issue, I assume, for the sake of argument, that there is maritime jurisdiction.**

(*See* Transcript of hearing held on September 27, 2013, annexed hereto as Exhibit 1, at p. 38) (emphasis added).  Judge Castel must have been referring to the Charter Party because of the cite to the *Odyssey Marine* case in which the issue was the enforceability of two distinct maritime contracts.  Here, CME is not suing under the Charter Party.

As to element 2 of the *Aqua Stoli* test, *i.e.*, whether Gretchen's property could be found within the district, Judge Castel made two rulings.  First, he found that an executory letter of credit is not the property of the beneficiary thereunder for purposes of attachment. "But, again, there is no dispute here that a letter of credit is not attachable property.  There is

---

[1] The Second Circuit established a four part test to determine if a Rule B Attachment should issue.  *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).  A plaintiff is required to show that: "(1) it has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is not statutory or maritime law bar to the attachment." *Id.*

not a debt due and owing to the beneficiary until such time as the beneficiary draws on the letter of credit." (*See* Exhibit 1, at p. 39). Secondly, Judge Castel found that the *situs* of any debt under the Letter of Credit would be in Tampa where the presentment of the papers necessary to draw down on the Letter of Credit would occur per the express terms thereof. "On that basis, I find that the debt, if there becomes a debt which is attachable, is located in Tampa, Florida, and not in this district." Judge Castel found no evidence that a presentment was made by Gretchen under the Letter of Credit. (*See* Exhibit 1, at pp. 39-41). For these reasons, Judge Castel vacated the attachment order that he had previously issued. (*See* Exhibit 1, at p. 42).

On September 27, 2013, Gretchen provided CME with notice that Gretchen had appointed Mr. Allan Edwards as agent for service of process within the Middle District. (*See* Doc. 5, ¶ 7 and Doc. 5-1).

## LEGAL ANALYSIS

**1.      CME Bears the Burden of Showing that an Attachment Should not be Vacated Under Supplement Rule E(4)(f)**

It is well-established that under Supplemental Rule E(4)(f), the burden is on the plaintiff to demonstrate why the attachment should not be vacated. *Aqua Stoli*, *supra* at 460 F.3d at 445; *see also Tetra Tech Ec, Inc. v. White Holly Expeditions LLC*, 2010 U.S. Dist. LEXIS 92935, at *6 (M.D. Fla. Aug. 16, 2010); *MS Adele Schifffahrtsgesellschaft mbH & Co. KG v. Wonderland Int'l Corp.*, 2010 U.S. Dist. LEXIS 144902, at *9 (S.D. Fla. Apr. 12, 2010); and *Blue Marine Shipping SA De CV v. Gulmar Offshore Middle East, LLC*, 2010 U.S. Dist. LEXIS 49287, at *15 (N.D. Fla. Apr. 26, 2010).

To sustain its burden on a motion to vacate, a plaintiff must demonstrate that the filing and service requirements of Supplemental Rules B and E have been met and, in addition, that: (a) it has a "valid *prima facie* admiralty claim" against the defendant; (b) the defendant cannot be found within the district; (c) the defendant has property within the district that has been restrained; and (d) there is no statutory or maritime bar to the attachment. *Aqua Stoli*, *supra*, 460 F.3d at 445.  As set forth below, CME cannot carry these burdens and, therefore, Gretchen respectfully submits that the Attachment Order and Process of Attachment and Garnishment should be vacated and CME's action dismissed with prejudice.

> **2.     The Attachment Order Must be Vacated Because CME Does Not Possess a Valid *Prima Facie* Admiralty Claim**

As noted above, it is well-settled under the Second Circuit's decision in *Aqua Stoli* (as followed by Courts in the Eleventh Circuit) that a plaintiff such as CME must establish the existence of a valid *prima facie* admiralty claim against the defendant in order to survive a motion to vacate under Supplemental Rule E(4)(f).  CME is seeking security for its claim that Gretchen fraudulently induced it to enter into the Charter Party.  However, CME's claim for fraudulent inducement does not support maritime jurisdiction.

> **a.     The Verified Complaint Fails to Establish Admiralty Jurisdiction**

In its Verified Complaint, CME has alleged that "[t]his is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the fraudulent inducement of a maritime contract, i.e., an executed time charter party for the employment of a seagoing cargo. This case also falls under this Court's

admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the Supplemental Rules For Certain Admiralty and Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration." Doc. 1, ¶ 4.

Had CME sued under the Charter Party, this case indisputably would fall within this Court's admiralty jurisdiction; however, CME has not sued under the Charter Party, and instead, CME seeks relief as the result of a purported tort that is independent of the Charter Party. (*See generally* Doc. 1).

CME's fraudulent inducement claim is not a maritime tort. The United States Supreme Court has developed a two-pronged test to determine whether a tort falls within the scope of federal admiralty jurisdiction. The first prong examines the locality of the injury. A tort satisfies the locality requirement if it "occurred on navigable waters" or if the "injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The second prong considers the connection between the tort and traditional maritime activity. A tort satisfies the connection requirement if it both has "'a potentially disruptive impact on maritime commerce'" and is of a general category of activities with "'a substantial relationship to traditional maritime activity.'" *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 364 (1990)).

"[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Grubart*, *supra*, 513 U.S. at 534. *See also* 1 Thomas J. Schoenbaum, Admiralty and Maritime Law, § 3-5 at 78 (2d ed. 1999) (the test for admiralty tort jurisdiction "requires that an incident (1)

occur on navigable waters; (2) bear a substantial relationship to traditional maritime activity; and (3) have a potential impact on maritime commerce").

The U.S. Supreme Court's decision in *Grubart* did not occur in a vacuum. Rather, it was the latest of a long line of cases establishing and refining the standard for evaluating the boundaries of maritime jurisdiction over tort claims. In *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249 (1972), the U.S. Supreme Court, in the context of aviation torts, concluded that the test for admiralty jurisdiction requires both that the injury occur on navigable waters and that the activity have some connection to maritime commerce. In *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982) and *Sisson v. Ruby*, 497 U.S. 358 (1990), the Court applied the *Executive Jet* formulation outside the context of aviation torts and required that all maritime torts have a substantial relationship to traditional maritime activity. *Grubart*, in its application and refinement of the *Sisson* standard, merely confirmed that whether the tort occurred on navigable waters remains part of the inquiry in determining admiralty jurisdiction.

Here, CME's fraudulent inducement claim does not meet any of the criteria outlined by the U.S. Supreme Court in *Grubart*. The fraudulent inducement did not occur on navigable waters, since any misrepresentations which are alleged to have occurred most certainly occurred on land when the parties were negotiating and executing the Charter Party. Once the Charter Party was signed, the alleged fraud in the inducement was complete and thus, all potential tortious acts occurred on land.

In its Motion for issuance of the Attachment Order, CME chiefly relied upon *Odyssey Marine Exploration, Inc. v. The Unidentified, Shipwrecked Vessel or Vessels*, 636 F.3d 1338

(11th Cir. 2011) for the proposition that its fraudulent inducement claim was within this Court's admiralty jurisdiction.  (*See* Doc. 3 at 5).  However, a review of the *Odyssey* decision demonstrates that it provides no support whatsoever for CME's position.  Despite citing to *Grubart* for another proposition, the Eleventh Circuit never discussed or applied the *Grubart* test to evaluate whether a tort fell within the scope of the court's admiralty jurisdiction.  It did not do so, because the only question it was confronted with was the issue of whether a written research agreement or an oral agreement in connection thereof, constituted a maritime **contract**.  *See Odyssey*, 636 F.3d at 1340 (citing to *Norfolk So. R.R. Co. v. Kirby*, 543 U.S. 14, 24 (2004) for the Supreme Court's explanation as to how to ascertain whether a contract is maritime in nature).  As the Eleventh Circuit explained:

> Upon a thorough review of the parties' briefs and the district court's order, we hold that Bray has brought a proper federal claim.  In relevant part, the district court concluded that Bray failed to set out a claim cognizable in admiralty jurisdiction because, "[a]lthough both Bray's research and Odyssey's obligation to pay pertain to the location of a ship, neither the research agreement nor the purported oral agreement amount to a maritime contract."  This was so, the court reasoned, "because neither contract involves maritime commerce."  We cannot agree.

*Odyssey*, *supra*, 636 F.3d at 1340; *see also Odyssey Marine Exploration, Inc. v. Shipwrecked Vessel*, 512 Fed. Appx. 890, 892 n.1 (11th Cir. 2013) (explaining that its prior holding "reversed the district court's dismissal of Bray's action for lack of subject-matter jurisdiction and remanded for further proceedings, holding that Bray's contract claims were cognizable in federal admiralty jurisprudence because his **contracts** with Odyssey 'were by their terms entered in connection with maritime commercial venture.'") (emphasis added).

9

No court involved in the *Odyssey* case, including the Eleventh Circuit, considered the question of whether any of the tort claims that may have been plead were within admiralty jurisdiction.  Instead, the claims were assumed to be contractual in nature and were analyzed from a contractual standpoint.  Thus, the *Odyssey* decision did not address whether the claim asserted gave rise to maritime tort jurisdiction.

By contrast, the Southern District of Florida's decision in *MS Adele Schifffahrtsgesellschaft mbH & Co. KG v. Wonderland Int'l Corp.*, 2010 U.S. Dist. LEXIS 144902 (S.D. Fla. Apr. 12, 2010) is on point.  In *Wonderland*, the Court was confronted with a Supplemental Rule B attachment premised on tort causes of action that were alleged to be maritime in nature.  Applying the *Grubart* test, the Court declined to find maritime jurisdiction over the tort claims on the basis that "[i]t is clear that the general character of the incidents and activities giving rise to Plaintiff's fraud and tortious interference claims flow from, and relate to, the Parties' contractual relationship; not from traditional maritime activity."  *Id.* at *16.

The Fifth Circuit's decision in *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 289 (5th Cir. 1989), is also directly on point here.  In *Kuehne*, the Fifth Circuit was called upon to determine whether certain intentional torts, including alleged misrepresentations that induced plaintiffs to enter into freight forwarding agreements characterized by the court as having "strong maritime implications," constituted maritime torts for purposes of admiralty jurisdiction.  Applying the *Grubart* location test, the Court looked to the location where the alleged misrepresentations occurred, namely at a meeting in Hamburg, [then] West Germany, and to the place where the alleged misrepresentations took effect, which the court found to be

10

"on land." *Id.* ("The misrepresentations had their desired 'effect' on land when they prompted [plaintiff] to sign the contracts of affreighment." *Id.*)  Most particularly, the court noted that no injury occurred to the cargo that was the subject matter of the agreements while aboard ship, and that "[a]t best, the injury, if any, that occurred on navigable waters was too remote from the tortious act to meet the situs requirement for admiralty jurisdiction." *Id.*

The Fifth Circuit further rejected the lower court's rationale that the nature of the contract mandated admiralty jurisdiction, holding instead that "[a] party to a contract with strong maritime implications must still satisfy . . . [the] situs requirement when seeking to predicate jurisdiction on a maritime tort." *Id.* (citations omitted).  "[I]nterference with a maritime contract does not vest the court with admiralty tort jurisdiction absent an impact on navigable waters." *Id.* at 289-90.

As in *Kuehne & Nagel*, CME alleges that Gretchen engaged in intentional torts relating to the entry into the Charter Party.  And as in *Kuehne & Nagel*, CME's claims are garden-variety fraud claims that result from alleged conduct that took place on land.  The same result was reached in *J. Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d 139 (9th Cir. 1995), where claims of tortious interference with a vessel pooling agreement were found not to be within the court's admiralty jurisdiction.  The Ninth Circuit held that "[t]here is no doubt . . . that whether the injury occurred on navigable waters remains part of the inquiry in determining admiralty jurisdiction," and found that all of "the claimed damages arose solely on land." *Id.* at 142-43.  Thus, the court held that no admiralty jurisdiction existed despite the fact that shipping routes and operations were implicated in the case. *Id.*; s*ee also*, *e.g.*, *Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA*, 78 F. Supp. 2d 162, 171 (S.D.N.Y.

1999) ("Intentional torts, such as fraud, misrepresentation and fraudulent inducement to contract 'must have an effect on navigable waters to be within admiralty jurisdiction.'"   No such effect on navigable waters was found.) (quoting 1 Schoenbaum § 3-5 at 79).

These cases are not anomalies.   Dozens of circuit and district court admiralty tort cases confirm that even where some aspect of shipping might be tangentially involved such that an "effect" could arguably be said to be felt at sea, the only relevant "effect" for admiralty jurisdiction is whether the alleged injury which is the basis of the claim took place on water.   *See*, *e.g.*, *Erogov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 455-56 (5th Cir. 1999) (location prong not met because injury in tortious interference case concerning wages for crewmen was not felt at sea); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 109 (2d Cir. 1997) (finding no admiralty tort jurisdiction over cargo claim "since the incident at issue in the instant case occurred solely on land–as the result of a train derailment having no relationship whatsoever to admiralty activity . . . ."); *Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 865 (11th Cir. 1998) (breach of duty to plaintiffs related to insurance for ship insufficient to satisfy jurisdiction because injury took place on land even though "there may be some connection between the alleged tort and traditional maritime activity"); *Carter v. Allstate Ins. Co. (In re Indigo Sky)*, 743 F. Supp. 2d 103, 107 (D. Conn. 2010) (holding that since a boat fire at a marina "does not involve a tort that occurred on navigable waters and merely had effects on land" the court lacked admiralty jurisdiction under the *Grubart* test); *Smith v. Mitlof*, 198 F. Supp. 2d 492, 500 (S.D.N.Y. 2002) ("Plaintiffs' contention that torts such as

these fall under admiralty jurisdiction if the 'effects' of the tort are felt on navigable water is unpersuasive.")

Therefore, defendant Gretchen respectfully submits that the Attachment Order must be vacated for lack of a *prima facie* admiralty claim, and furthermore that plaintiff's claims must be dismissed for lack of subject matter jurisdiction.

### b. This Court Lacks Subject-Matter Jurisdiction

In the absence of admiralty jurisdiction, this Court lacks subject-matter jurisdiction over this case.  The Verified Complaint asserts admiralty jurisdiction as the sole basis for this Court hearing this matter; however, as demonstrated above, admiralty jurisdiction is lacking in this case.  *See* § 2.a., *supra*.  The Verified Complaint does not establish a federal question under 28 U.S.C. § 1331, and the parties cannot establish diversity under 28 U.S.C. § 1332 because both parties are aliens.  *See* 28 U.S.C. § 1332(a); *see also Anotnier v. Miller*, 2012 U.S. Dist. LEXIS 22578, *7 (M.D. Fla. Feb. 23, 2012) (finding the "newly amended version of § 1332(a) makes it clear that . . . diversity jurisdiction does not exist over cases involving only aliens."); *Gardiner v. Kelowna Flightcraft, Ltd.*, 2011 U.S. Dist. LEXIS 100220, at *3 (S.D. Ohio Sep. 6, 2011) ("Article III . . . does not permit actions between aliens.") (internal citations omitted).  In the absence of subject-matter jurisdiction, this Court must dismiss the case.

### 3. Gretchen Can Be Found "Within the District"

By its plain terms, Supplemental Rule B applies only where "a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed . . . ."

a.      **Local Rule 7.02(a) Establishes Gretchen's Presence "Within the District"**

Notwithstanding Supplemental Rule B's failure to define what constitutes "within the district," Local Rule 7.02(a) clarifies this requirement.

> In an action in personam filed pursuant to Supplemental Rule (B), a defendant shall be considered "not found within the district" if he cannot be served within the Middle District of Florida with the summons and complaint as provided by Fed. R. Civ. P. 4(e)(1) or (2), (g), (h)(1), or (j)(1) or (2).

Local Rule 7.02(a).[2]   Rule 4(h)(1), which governs service on a corporation such as Gretchen, permits service "by delivering a copy of the summons and of the complaint to . . . any agent authorized by appointment or by law to receive service of process . . . ."  Fed. R. Civ. P. 4(h)(1)(B).  "Where the federal rule and the local rule are not inconsistent, the clear language of the local rule dictates [the] decision . . . ."  *Maritrans Operating Partners Limited Partnership v. The M/V BALSA 37*, 64 F.3d 150, 154-55 (4th Cir. 1995) (finding the Eastern District of Virginia's local rule defining the phrase "not found within the district," which permitted service on a corporation by serving a copy of the summons and complaint in accordance with Fed. R. Civ. P. 4(d), thwarted a Rule B attachment ).[3]

In the instant case, it is undisputed that Gretchen appointed an agent for service of process within the Middle District of Florida prior to the filing of the Verified Complaint.

---

[2] Local Rule 7.02(a) was established after the decision of *LaBanca v. Ostermunchner*, 664 F.2d 65 (5th Cir. 1981).  *See* Advisory Notes to Local Rule 7.02.

[3] It should be noted that the 4th Circuit noted that the *Maritrans* decision was consistent with the 5th Circuit's decision in *LaBanca v. Ostermunchner*, 664 F.3d 65 (5th Cir. 1981), discussed *infra*, which utilized the two-prong case law test for determining if a defendant is found within the district under Rule B.  *See Maritrans*, 64 F.3d at 155 n.13.

*See* Doc. 3, at 3 ("And last Friday [September 27, 2013, prior to the filing of the Verified Complaint in the instant case], after the Rule B hearing had concluded [in the Southern District of New York Action], Gretchen served notice to CME that it had appointed an agent in this District . . . ."); *see also* Doc. 5, ¶ 7 ("On September 27, 2013, . . . Gretchen faxed CME a notice of appointment of a Mr. Allan Edwards as Gretchen's agent for service of process in Tampa . . . .") and Doc. 5-1. CME clearly had notice that Gretchen had an agent for service of process in the Middle District of Florida prior to the filing of the Verified Complaint. Local Rule 7.02(a) establishes that Gretchen could be found within the district, thereby rendering Supplemental Rule B inapplicable. Accordingly, the Attachment Order should be vacated, and the Process of Attachment and Garnishment should be quashed.

### b.     Case Law Requirements to be Found "Within the District"

To the extent the Court finds that Local Rule 7.02(a) does not fully resolve the issue of Gretchen's presence within the district, Gretchen still satisfies the two-pronged analysis of *LaBanca v. Ostermunchner*, 664 F.2d 65 (5th Cir. 1981). First, the Court must determine whether the defendant is present for personal jurisdiction purposes; in other words has the defendant engaged in sufficient activity or "minimum contacts" to warrant the exercise of personal jurisdiction. *Id.* Second, the Court must determine whether the defendant can be served in the district. *Id.* Both prongs must be met in order for the defendant to be "found within the district" under Supplemental Rule B.

Thus, in order to maintain its Attachment Order, CME must establish that at the time it filed the Verified Complaint, Gretchen could not be found within the district in terms of personal jurisdiction and could not be found for service of process.

i.        **Gretchen had an Agent for Service of Process Within the District**

As stated above, there is no dispute that Gretchen had an agent for service of process (and thus, could be served) within the District, since counsel for CME concedes that CME received notice on September 27, 2013, of appointment of Allan Edwards as Gretchen's agent for service of process in Tampa.  (*See* Declaration of Natalie P. Thomas dated Sep. 29, 2013, at ¶ 7 and at Exhibit A – Doc. 5).  Accordingly, this prong is easily satisfied.

ii.        **Gretchen was Jurisdictionally Present Within the District**

Gretchen is also present in the district because it is subject to specific personal jurisdiction in Florida due to its acts within and contacts with the State.

In *Helicopteros Nacionales de Columbia F.A. v. Hall*, 466 U.S. 408, 414-17 and n. 8, 9 (1984), the Supreme Court noted that there are two types of personal jurisdiction: general and specific.  General personal jurisdiction arises from a party's contacts to the forum state that are unrelated to the litigation; the test for general jurisdiction is whether the party had "continuous and systematic" general business contacts with the forum state.  *Perkins v. Benquet Consolidated Mining Co.*, 342 U.S. 437, 438 (1952).  Specific personal jurisdiction is founded on a party's contacts to the forum state that are related to the cause of action.  The two-part *International Shoe* "minimum contacts" due process analysis is used to evaluate specific personal jurisdiction issues.  *See Burger King v. Rudzewicz*, 471 U.S. 462, 473 n. 15 (1985); *Borg-Warner Acceptance Corp. v. Lovett & Tharp, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986).

The crucial issue is whether a party's contacts with the forum state are substantial enough that they reasonably "could expect to be haled before a [Florida] court." *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775-76 (1984) ("the 'fairness' of haling respondent into [a Florida] court depends to some extent on whether respondent's activities relating to [Florida] are such as to give that State a legitimate interest in holding respondent answerable on a claim related to those activities.") A defendant has fair warning that it might be subject to a forum's jurisdiction if the defendant purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. at 472 (quoting *Helicopteros Nacionales*, 466 U.S. at 415).

In the instant case, acts giving rise to the purported cause of action occurred within the Middle District such that the Court may exercise specific personal jurisdiction over Gretchen. For instance, the Vessel was inspected by representatives of both Gretchen and CME in Jacksonville, Florida on December 9, 2009. (*See* Doc. 1, ¶ 26; *see also* Davis Decl., ¶ 4). Further, the Vessel was purchased by Gretchen for the specific purpose of this Charter Party. (*See* Davis Decl. ¶ 3, 5). Additionally, it is also worth noting that the Letter of Credit at issue in this case was issued in Tampa, Florida to Gretchen. (*See* Doc. 4-5). These acts pertain specifically to the Charter Party into which Gretchen purportedly fraudulently

induced CME to enter and all occurred within the Middle District.  Accordingly, this Court

has the authority to exercise specific personal jurisdiction over Gretchen.

If that were not enough, Fla. Stat. § 48.193(1) lists acts under which a defendant may

be subject to jurisdiction in Florida, provided the cause of action arises out of a specifically

pleaded act under the statute.  Specifically, § 48.193(1) provides that:

> Any person, whether or not a citizen or resident of this state,
> who personally or through an agent does any of the acts
> enumerated in this subsection thereby submits himself or
> herself and, if he or she is a natural person, his or her personal
> representative to the jurisdiction of the courts of this state for
> any cause of action arising from the doing of any of the
> following acts:
>
> (a)   Operating, conducting, engaging in, or carrying on a
> business or business venture in this state or having an office or
> agency in this state.
>
> (b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1) (2010).  The negotiations between Gretchen and CME establish that

both Gretchen and CME were "operating, conducting, engaging in, or carrying on a business

or business venture in [Florida]" for purposes of Fla. Stat. § 48.193(1)(a).  Additionally,

Gretchen would be subject to personal jurisdiction under Fla. Stat. § 48.193(1)(b)  because

CME has alleged that Gretchen has engaged in tortious acts that resulted in the entry by CME

into the Charter Party.  (*See generally* Doc. 1; *see also* Davis Decl., ¶¶ 6-11).  Thus, under

CME's own theory of the case, the fraudulent acts complained of occurred in Florida, and

render Gretchen subject to specific jurisdiction in the Middle District of Florida due to the

operation of Fla. Stat. § 48.193(1) and Gretchen's further activities within the Middle

District.

18

By virtue of the existence of its agent for service of process in the Middle District and its subjection to specific jurisdiction, it is clear that Gretchen could have been served with the summons and complaint within the Middle District of Florida at the time that CME filed its Verified Complaint, and therefore, Gretchen was "within the district" for purposes of Supplemental Rule B.  As such, the Attachment Order should be vacated, and the Process of Attachment and Garnishment should be quashed.

**4.     The Attachment Order Should Be Vacated Because Gretchen Has No Attachable Property Interest in the Letter of Credit**

A further basis for the vacatur of the Attachment Order is that Gretchen does not possess an attachable property interest in the Letter of Credit.  At the outset, it should be noted that Florida state law will govern the issue of the nature and *situs* of the property sought to be attached.  *See*, *e.g.*, *Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 70 (2d Cir. 2009) ("When there is no federal maritime law to guide our decision, we generally look to state law to determine property rights.") (citing to *Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.), Ltd.*, 759 F.2d 262, 266 (2d Cir. 1985)).

Due to their vital importance in international trade and finance, letters of credit enjoy special status and treatment relative to other instruments.  "This Circuit has stated clearly its endorsement of the principle that a letter of credit is a separate contract, independent of the underlying obligations or transactions that gave rise to its issuance, and that strict adherence to this principle is necessary to protect the integrity of letters of credit as a valuable commercial tool."  *In re Air Conditioning, Inc. of Stuart*, 72 Bankr. 657 (S.D. Fla. 1987),

*aff'd in pertinent part*, 845 F.2d 293 (11th Cir. 1988), *cert. denied*, 488 U.S. 993 (1988); s*ee also Pro-Fab, Inc. v. Vipa, Inc.*, 772 F.2d 847 (11th Cir. 1985).

In reliance on this principle, the court in *In re Prime Motor Inns, Inc.*, 130 B.R. 610 (S.D. Fla. 1991), held that a letter of credit could not be considered the property of a debtor's bankruptcy estate and the automatic bankruptcy stay would not prevent payment under the letter of credit from being made. *In re Prime Motor Inns, Inc.*, *supra*, 130 B.R. at 613; *see also Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1318 (S.D. Fla. 2009). For largely the same reasons, the court in *Oceanfocus Shipping v. Naviera Humboldt, S.A.*, 962 F. Supp. 1481 (S.D. Fla. 1996), in analyzing whether there existed an attachable property interest in a line of credit, observed of letters of credit that:

> [M]any courts have recognized that funds available to a defendant under a letter of credit issued by a third party are not subject to attachment as property of the defendant.
>
> * * *
>
> The logic of these cases makes sense here, and suggests that a mere entitlement to funds at some point in the future does not constitute the kind of asset that can be attached under the admiralty rules. Like funds available under an open letter of credit or funds awaiting an electronic transfer, funds available under a line of credit do not belong to the defendant unless and until certain conditions are satisfied or certain discrete events occur.

*Oceanfocus Shipping*, *supra*, 962 F. Supp. at 1484-85.

The cases relied upon by the *Oceanfocus Shipping* court include *Union Planters National Bank v. World Energy Systems Associates*, 816 F.2d 1092, 1097-98 (6th Cir. 1987), which involved vacatur of an attachment of a letter of credit on the basis that since the defendant beneficiary of the letter of credit had not submitted a draft seeking payment under

20

the letter of credit, there was no property capable of being attached at the time the attachment order was served on the bank.

Other courts have echoed this reasoning and applied it in analogous contexts. *See*, *e.g.*, *Diakan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, 584 F. Supp. 782, 784 (S.D.N.Y. 1984) (observing that "it would be stretching the conventional meaning of words to consider the beneficiary's interest in a letter of credit as either property [of the defendant] in the hands of the bank or a debt owed to it by the bank"); *Brenntag International Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 252 (2d Cir. 1999) (finding executory standby letter of credit was not property of beneficiary thereunder for purposes of attachment); *Prime Shipping Company Ltd. v. Wajilam Exports Pte. Ltd.*, 2006 U.S. Dist. LEXIS 34637 (S.D.N.Y. 2006); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. Supp. 420 (S.D.N.Y. 1987).

Moreover, Judge Castel relied on this reasoning, as it was articulated by the New York Court of Appeals in *Supreme Merchandise Co. v. Chemical Bank*, 70 N.Y.2d 344 (1987), in vacating the attachment of the Letter of Credit in the Southern District of New York by CME, concluding "that there is neither property of the defendant [Gretchen] in this district, nor has the plaintiff [CME] demonstrated that there is likely to be property of the defendant in this district." (*See* Exhibit 1 at pp. 39-42).

Here, because no draft has been made under the letter of credit at issue, it remains executory. (*See* Davis Decl. at ¶ 10). Therefore, the service of the Attachment Order on Citibank N.A. cannot reach any property of Gretchen since prior to the presentation of conforming documents, Citibank N.A. is neither indebted to Gretchen nor does it hold any

property of Gretchen.[4]   As the Second Circuit explained in *Reibor*, an attachment is void

unless a garnishee actually "possesses" a defendant's property when the attachment is served.

*Reibor*, *supra*, 759 F.2d at 266; *Union Planters*, *supra*, 816 F.2d at 1098 (explaining that "the

nature of the Rule B(1) writ is such that it must either attach property on the date of service

or be void."); *see also Western Bulk Carriers, Pty. v. P.S. Int'l*, 762 F. Supp. 1302, 1307

(S.D. Ohio 1991).

In sum, letters of credit and their proceeds are not attachable property and, therefore,

the Attachment Order in this case should be vacated since the only property sought to be

restrained is outside the reach of the Attachment Order.

**5.      Gretchen Could Have Been Sued in a Convenient Adjacent Jurisdiction when CME's Verified Complaint was Filed**

In the alternative, even if this Court does not find that Gretchen was present within

the District at the time CME's Verified Complaint was filed, the Attachment Order should

nevertheless be vacated on equitable grounds under the convenient adjacent jurisdiction

exception to Supplemental Rule B attachments set forth by the Second Circuit in *Aqua Stoli*,

*supra*.

In *Aqua Stoli*, the Second Circuit provided examples of situations where an

attachment order may be vacated by the Court even though plaintiff has otherwise met the

requirements set forth in Supplemental Rule B.  Courts may vacate an attachment:

---

[4] Although the Charter Party require issuance of the letter of credit by a first class bank with offices in Miami, for unknown reasons, it appears the letter of credit was issued by Citibank N.A.'s servicer, Citicorp North America, Inc. here in Tampa.  Insofar as Gretchen is aware, Citibank N.A. has no branches in Tampa but does in Miami.  In the circumstances, it is not clear whether the bank's obligation under the letter of credit is in Tampa or Miami.

> if the defendant shows at the Rule E hearing that 1) the
> defendant is subject to suit in a convenient adjacent
> jurisdiction; 2) the plaintiff could obtain in personam
> jurisdiction over the defendant in the district where the plaintiff
> is located; or 3) the plaintiff has already obtained sufficient
> security for the potential judgment, by attachment or otherwise.

*Aqua Stoli*, *supra*, 460 F.3d at 445.

Other pre-*Aqua Stoli* courts have reached similar holdings.  *See*, *e.g.*, *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119, 124 (S.D.N.Y. 1979) (observing the unfairness inherent in permitting maritime attachments when normal civil proceedings are readily available); *Western Bulk Carriers (Australia), Pty. v. P.S. Int'l. Ltd.*, 762 F. Supp. 1302, 1309 (S.D. Ohio 1991) ("The Court does have discretion to set aside an unfair attachment where the use of the maritime remedy is abusive, such as where an attachment is obtained unfairly in one district while a proper lawsuit could be commenced in another district without unfairness or convenience."); *D/S A/S Flint v. Sabre Shipping Corp.*, 228 F. Supp. 384 (E.D.N.Y. 1964), *aff'd on other grounds sub nom.*, *Det Bergenski Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir. 1965).

The relevant inquiries are whether "the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought" or "if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets."  *Aqua Stoli*, *supra*, 460 F.3d at 444-45.

Here, instead of turning to the Middle District of Florida to obtain the Attachment Order, CME could easily have sued Gretchen in the Southern District of Florida due to the specific jurisdiction arising from Gretchen's acts in that District relating to the Charter Party

23

(*see* § 3.b.ii., *supra*), as well as the specific appointment of non-party KYMA SHIP MANAGEMENT, INC. as its agent for service of process in Miami with respect to all claims. Moreover, CME maintains an office and place of business in Miami, making both CME and Gretchen subject to jurisdiction in the Southern District of Florida. (*See* Davis Decl., at ¶¶ 6-11).

Thus, Gretchen respectfully submits that not only would this Court be justified in ordering vacatur of the Attachment Order and quashing of the Process of Attachment and Garnishment, but both are warranted in these circumstances.

### 6.      Gretchen is Entitled to a Prompt Hearing and Its Fees and Costs

"Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to ***a prompt hearing*** at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Supplemental Rule E(4)(f).  Gretchen hereby requests an expedited hearing on this Motion.

Additionally, Local Rule 7.02(e)(2) requires an award of attorney's fees, costs, and other expenses incurred as a result of a seizure if the seizure is vacated.  *See* Local Rule 7.02(e)(2).  Because this Motion demonstrates that vacatur is appropriate, Gretchen should be awarded its fees, costs, and expenditures incurred in bringing this Motion.

### <u>CONCLUSION</u>

For the foregoing reasons, Gretchen respectfully requests that this Court vacate the Attachment Order and quash the Process of Attachment and Garnishment, dismiss CME's action with prejudice, release any and all property attached or restrained pursuant to the

Attachment Order, award Gretchen its attorney's fees, costs, and expenditures incurred as a result of the seizure, and award such other and further relief the Court deems just and proper.

### Local Rule 3.01(g) Conference

Pursuant to Local Rule 3.01(g), undersigned counsel contacted counsel for Plaintiff, who does not consent to the relief requested herein.  Counsel have agreed to a proposed briefing schedule, subject to the Court's approval, as follows:

Plaintiff's Response to this Motion will be due on Friday, October 11, 2013;

Gretchen's Reply, if required, will be due on Tuesday October 14, 2013; and

Oral argument on Thursday, October 17, 2013, or Friday, October 18, 2013.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 4, 2013, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will provide electronic service on all counsel of record.


Of Counsel:

Kirk M.H. Lyons
klyons@lyons-flood.com
Lyons & Flood LLP
65 W 36th St FL 7
New York, NY 10018-8018
(212) 594-2400
Fax No: (212) 594-4589
(Motion to Appear Pro Hac Vice to
be Filed)

s/Carl R. Nelson_____
Carl R. Nelson
Florida Bar No: 0280186
cnelson@fowlerwhite.com
Scott Richards
Florida Bar No: 72657
scott.richards@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL  33601
(813) 228-7411
Fax No: (813) 229-8313
Attorneys for Defendant

45969941